of Corrections. Mr. Rimza. Good morning. My name is Edward Rimza. I am the attorney for Matthew Becker, and at the outset I would request five minutes at the end for rebuttal. Thank you. May it please the Court, Section Title 28, United States Code, Section 2253C2 governs the granting of a request for a certificate of appealability. Its language couldn't be more plain. It reads that a COA may issue only if the applicant has made a petition that has held that to establish that a substantial showing, the defendant must show that reasonable jurors could debate whether the petition should be resolved differently or the issues presented were adequate to proceed further. Glaringly absent from that text is any reference whatsoever of 2254D. And along those lines, the Supreme Court has already weighed in on this issue in the case of Miller-El, which was cited both in our brief as well as the appellee's brief. And under Miller-El, the Supreme Court acknowledged that the COA standard inquiry expressly is not a merits inquiry. In fact, in Miller-El, the Supreme Court went so far to say that the statute forbids it and that the assessment for a COA is nothing more than a gatekeeping threshold inquiry. In Miller-El, the Court emphasized that the threshold nature of the determination was essentially a very, very low standard for appellate review of habeas decisions. But it also said we look at the application of the standard, how it's been applied. And I agree, Judge, that the Court did say that. However, I don't believe, again, that it shouldn't be heightened to while the Court may have to consider it, I think once it becomes a dispositive factor, and it should not be a dispositive factor in the granting of a COA, I think once that has happened, then the Court would have gone too far because it is only supposed to be a threshold inquiry. Once what has happened, it's gone too far? I'm sorry, Judge. Once what has happened makes it go too far? Well, I think that because the language of 2253C doesn't mention anything about considering 2254D, then it would, if you use the 2254D standard and somehow incorporate that into 2253C, if the decision whether or not to grant a COA hangs on the determination of 2254D, then I think the Court has gone too far. But how do you square that with Miller-El? Directing your attention to page 1039 of Miller-El, the Court wrote, the COA determination under 2253C requires an overview of the claims in the habeas petition and a general assessment of their merits. That seems consistent with what you just said. Then it says, we look to the District Court's application of AEDPA to petitioners' constitutional claims and ask whether that resolution was debatable amongst jurists of reason. That seems inconsistent with what you just argued in response to Judge Sareka's question. Well, Judge, I'm not sure if that was, you're reading from the majority opinion or Justice Scalia's. Well, I did read that, but I also know that they said that it was incorrect, in the same opinion, that it was incorrect for the Court of Appeals to import the standard from 2254D into the COA analysis. But in Miller-El, isn't it the case that neither the District Court nor the Court of Appeals evaluated the COA under AEDPA's standard? I thought it was clear that the mistake made by both the lower courts in that case was that they went straight to the merits of the claim. Well, I think there were, I agree, but I think in their analysis, the Supreme Court did say that this was just a threshold analysis and that they made a clear distinction between addressing the AEDPA standards and using that, using a merits analysis to determine whether the claim was ineligible for the COA analysis in granting a COA. I mean, isn't this just sort of a binary choice that we're asked to make here? The question presented is whether the District Court in this case, in determining whether jurists of reason could debate the proposition, should apply AEDPA's deferential standard or not? Isn't that what we're supposed to decide? Yes. All right, then if it's that, AEDPA deference or not, what do we do with what I just read from Miller-El, the majority opinion in Miller-El? We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution, that resolution I think refers to the application of AEDPA, not to the claim generically independent of AEDPA's deferential standard. So I acknowledge and I think that's probably the crux of why the court wanted to hear argument on this issue, that there is some conflict between that. But I think subsequent cases, including Buck v. Davis, and I know there are other circuits, including the Fifth and the Tenth, that do seem to use in the COA analysis the AEDPA standard. But again, repeatedly, the court has, the Supreme Court has held that it should not be a merits analysis. I think that the danger in considering AEDPA in a COA analysis, which is supposed to be fairly low, a threshold, is that it starts to make the merits analysis, you're considering the substantive claims in the COA analysis and then considering it for the full merits. So I think that the, even in subsequent cases, post-Miller-El, including in Buck v. Davis, the Supreme Court clearly stated that the standard is supposed to be straightforward for a COA analysis. And I think once you start evaluating and start to include the AEDPA standards in just simply the COA analysis, at that point, I think it's gone too far. Let me try to give you, well, it's not really hypothetical. Let's use the facts of this case. I'm going to try to separate out what might be a merits determination from what might be a COA threshold determination. Here we've got an issue about whether Becker was in custody, correct? Correct. Let's say an appellate judge would look at this record from the state court and say, on de novo review, you know, I think he probably was in custody and I'm not sure I would have that wrong if I were looking at it de novo. That would be a merits determination, right? But if we apply AEDPA deference and you look at the state court's determination that Becker was not in custody, if you said, well, reasonable minds could disagree about whether Becker was in custody. And what AEDPA teaches is that it's not the federal judge's role to look at that and say, well, the federal judge was not in custody. Rather, it's the federal district judge's role to say, reasonable minds could disagree about this. So I'm going to stay agnostic about whether he was or was not in custody because under AEDPA, it suffices to say that reasonable people could disagree about it. And if you look at the state court's determination that Becker was not in custody, it suffices to say that reasonable people could disagree about this. And if under that scenario, granting a COA would be the ultimate futile, idle exercise, would it not? Well, Judge, I think that even in Miller-El, the court even said that a claim can be debatable among every jurist. A claim can be debatable even though every jurist of reason might agree after the COA has been passed. And I understand that, as you say, it may be fruitless. But nevertheless, the standard just to get his foot in the door, in my opinion, respectfully, does not include using AEDPA just to make that threshold inquiry. That's a separate analysis. And in this case, I think this was actually a mixed case of fact and law. I mean, there are some things, I mean, the judge, the district court judge did rely heavily on D-1 as opposed to D-2. But I think it is a question of mixed fact and law because there are things that were in the record that he relied upon, that the state court relied on. For instance, the fact that it was a, that he voluntarily, that he was, I believe, that he voluntarily, that he voluntarily checked himself into a psychiatric, a 302. It wasn't. It was that the record was quite clear that there was an involuntary 302 commitment where one of the troopers was the one who actually took him there. That was factually incorrect. The issue about a windowless room, the windows that were in this interrogation room was a two-way mirror in the room that law enforcement uses. There are things like that in the record that are just factually wrong. But again, the, I just want to address briefly, the court has already addressed this issue in part in Paveon versus SCI Mahanoy, that they did adopt the Miller-El standard where the court did say and rejected a heightened standard that the Commonwealth was requesting in that case as well. But in that case, oh, I'm sorry. In that case, the court didn't apply it but deference in the first instance. Right. So is it distinguishable then or is it? I don't think it's, I don't think it's distinguishable because I, again, I don't think the court needed to apply it. I think the correct, I think the court correctly decided that they didn't need to defer to the AEDPA standard, that they looked clearly at 2253C and the requirement, the threshold analysis that was required for a COA. Okay. Thank you. We'll hear you on rebuttal. Thank you, Judge. Mr. Anderson. Good morning, Your Honors. May it please the court. I'm Travis Anderson. I'm a member of the Appellees, the Office of the District Attorney of Lancaster County and the Commonwealth of Pennsylvania. If I understand the appellant's argument correctly, he would seek to have the Court of Appeals or any court considering whether a certificate of appealability should issue to consider the merits of the underlying constitutional claim in a vacuum when deciding whether or not the resolution of the case was arguable among jurists of reason. Well, he's saying don't consider the merits. Well, I think what he's saying is base the threshold determination so you don't get to the merits. And Miller L. criticizes the Fifth Circuit and the District Court for going to the merits, right? Correct. If I, I've been inarticulate. If I understand the appellant's argument, it's that we should just be considering the constitutional claim in a vacuum without considering EDPA deference. And I respectfully submit there's no way to do that and still be in compliance with Miller L. and to not do violence to the policy considerations that underlie the certificate of appealability requirement. 2253 doesn't mention EDPA deference, right? So what's, putting aside Miller L. and Pavan, what is the textual basis for EDPA deference in this context? So I would agree that 2253 does not mention EDPA deference. However, the United States Supreme Court case law interpreting 2253 and the certificate of appealability requirement very clearly states that the, the, the constitutional claim, the, the EDPA deference, the constitutional claim, the issue of debatability can't be looked at in a vacuum. It has to be looked at through the lens of how the District Court disposed of the claim. And that's what Miller L. says and that's what Justice Scalia in his concurrence brings into sharp relief. You know, cases going all the way back to SLAC and maybe even before then show that if there's a procedural basis on which the District Court dismissed the case, then you look to the procedural basis and whether jurists of reason could debate whether it was properly dismissed for that reason. And the Tenth Circuit case that the court directed us to address, Dawkins v. Hines, I think does a very eloquent job of explaining why that's important to animate the policy considerations that underlie the certificate of appealability requirement. Because if the court were to just take an in-the-vacuum assessment, of the constitutional claim, and then grant a certificate of appealability based on that, and then be stuck with a case where clearly there was a procedural bar or there was some other bar that would prevent reaching the merits of the constitutional claim once the appeal is granted, then the appeals court isn't really complying with the notions of federalism and comedy, conservation of judicial resources. I mean, these are all interesting policy arguments, counsel. But again, where is this in the statute? Can you help us understand how to ground this in the language that Congress has given? I would point to what the United States Supreme Court said in Miller-El, where they clearly and unequivocally and explicitly directed that in making this determination, that's the appropriate standard. And the quote read, if the Supreme Court were to dismiss the case, the Supreme Court would have to dismiss the case. And the quote read by Judge Hardiman, as I have written out here, I won't read it again, but it says expressly that you have to look at the way the district court applied EDPA deference in deciding whether or not the resolution of the case, the resolution of the claim, was debatable. And I would note just briefly, the other case that the court, the case that the court, the case that the court, the case that the court, the case that the court directed us to consider as part of this litigation, the Pabon case, specifically footnote nine in the Pabon case. As I indicated in my brief and would be happy to expand upon here if your honors wish, I don't believe that Pabon is in conflict with Dockins v. Hines, nor is it in conflict with Miller-El. I would submit that in Pabon, the Commonwealth, the prosecution, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court, the Supreme Court, was arguing for the court to substantively apply EDPA deference and all of the presumptions that come along with that when deciding whether or not the outcome was debatable. Not asking the court to consider whether the district court's application of EDPA deference was debatable. And obviously what the prosecution in that case was trying to do is not consistent with Miller-El, is not consistent with the statutes. But there's nothing in the Pabon footnote that would prohibit this court or would seek to limit this court in considering the EDPA deference applied by the district court. Moving on to... Is footnote nine in Pabon dicta? I don't, I'm not sure that I would classify it as dicta. Because, and I would invite the court to take judicial notice of the appellate supplemental brief that was filed in the Pabon case on July 14, 2010, pages 26 through 27. In that case, again, the appellees in laying out what standards the court should consider and whether to issue a certificate of appealability, substantively said, when you look at this, when you look at the debatability, first you need to apply EDPA deference to it and all the presumptions that come along with that. And only after that consideration can you decide whether or not it was debatable. So that was something that was in controversy in that particular case. But I think that the legal principles espoused then in footnote nine addressing that argument is a very limited applicability, because it is only addressing that argument that you should substantively apply EDPA deference when looking at the debatability. There's nothing there that's inconsistent with Miller-El. Miller-El basically says the same thing. Miller-El just then clarifies further that the debatability determination should be made in reference to the debatability of how the district court applied EDPA deference and disposed of the claim. Can we go back to the statute following up on Judge Mabee's question, 2253C2. It requires a substantial showing of the denial of a constitutional right, correct? Yes. And that doesn't mention EDPA directly, right? It doesn't mention EDPA deference. I guess what I'm wrestling with is, is a substantial showing of the denial of a constitutional right different on direct appeal than on habeas review? I guess for, I would argue that for purposes of appeal in a habeas corpus case, federal habeas corpus, which is itself by design an extraordinary remedy, a substantial showing of the denial of a constitutional right cannot be had, cannot be found if all of the rigors of the habeas, of what you need to go through to get to habeas corpus relief haven't been satisfied. So perhaps the terms substantial showing mean something that takes into account everything that you need to do to show a constitutional violation in the habeas corpus court. It's, again, it's not, when you're in federal district court on review of a state court determination, it's never that de novo look at it. It's a review. I would focus more on constitutional right than substantial showing because there are violations of constitutional rights that don't always result in a remedy, right? Sometimes there's harmless error, et cetera. Sometimes people are deprived of their constitutional rights, but they don't timely challenge it and they're out of court. Sure. So I guess I'm wrestling still with this idea of futility or an idle exercise by the courts because if a reasonable jurist would look at something that happened in a state court and say, gee, that was inconsistent with the defendant's constitutional rights, but then right after that conclude that the habeas statute as written prevents the federal court from doing anything about it, then where are we? Then if by we, your honor, means the appellate court, the court would be in a position merely to issue a dicta that could perhaps, that would be out there then, but would not have any binding legal effect on the parties who are litigating that matter. Well, let's take it to the district court level. The federal district court reviewing a state case on federal habeas that concludes there was a constitutional violation or a probable constitutional or debatable constitutional violation, but federal habeas statute prevents me from doing anything about it. Should that judge grant a COA and then say what I just said or just then say because of all that? I guess this gets to Justice Scalia's concurrence in Miller-El because Justice Scalia in that concurrence, which has been adopted by some other courts, not all certainly, suggests that if there's some other provision of federal habeas law that says no to a state conviction, then that would be an extraordinary remedy. Right. I mean, federal habeas relief arising out of a state conviction is an extraordinary remedy. And there's a lot of conditions that have to be met before it can be granted. And so I would submit that in any instance where there is a bar to achieving relief, that then appeal would be a fruitless and futile exercise. And that I don't believe that Congress interposed the federal habeas relief. I don't believe that Congress interposed this certificate of appealability requirement so as to enable fruitless and futile exercises. The certificate of appealability is designed to ensure or to serve as a gatekeeping function to keep cases like that out of the federal appeals courts. And there's important reasons. But you would concede, wouldn't you, that the gatekeeping function shouldn't keep out cases like that? That's the whole point, right? Sure. And that's where Mr. Rims is quite right to say this is a relatively low threshold, right? If it's debatable, if the petitioner might win, then the COA has to issue, right? If, I would agree with that as a general standard, but the only way that the petitioner might win is if there's not some procedural bar, yes, some hurdle that they're never going to be able to get across. And then all that we're doing is trying to get across the hurdle. And all that we're doing is debating interesting academic points of constitutional law, but not actually providing any substantive relief or issuing any binding authority that's going to do anything to change the status quo with respect to actual litigants. And I think that's entirely consistent with both the notion of federalism, the federal habeas relief, and the certificate of appealability requirement. And then I would just respectfully submit that the statute of limitations, the statute of limitations, applying that correct standard, applying and implementing Miller L to this case, and the way that the district court deferred to the findings of fact and conclusions of law reached by the state court, that no certificate of appealability should issue in this case. Because jurists of reason could not debate the fact that the state court did not misapply federal law in this case, that Mr. Becker was not in custody, and that the statements that he made during the course of that interview, the two challenge statements, do not constitute unequivocal invocations of his right to remain silent. Unless your honors have any further questions, I would conclude my argument. All right. Thank you very much, Mr. Anderson. We'll hear the rebuttal of Mr. Rimza. Judge, just a couple of points I want to make. I don't want to, I guess, belabor this, but obviously the Dawkins decision, I would submit, and I know the court asked us to evaluate that, but I think that case runs afoul of Miller L and its progeny. I know that in that case they did adopt Justice Scalia's concurrence, which that concurrence never, that opinion never found its way into the majority opinion. But I also think it's wrong. Why was Dawkins wrong? Tell us. It's a pretty short opinion, pretty curt. What mistake or mistakes did the court make in Dawkins? Well, I think that in that case, the court did include, in its decision, the fact that the court did not include the AADPA. They held that the AADPA's deferential treatment must be incorporated into the consideration of the petitioner's habeas COA requests. And I think that's where they... You just described what they did, but why was it wrong? What was the mistake? What was inconsistent? Show us something in Dawkins that's inconsistent with something in Justice Kennedy's majority opinion in Dawkins. Well, I think that in Dawkins, again, my understanding was that they did seize on Justice Scalia's concurrence, which imported the standard of using the AADPA in evaluating a COA request. I think that was the error. All right, but now you're correct in what you just said, but now you've got to show us something that's inconsistent. Show us what in Justice Scalia's concurrence is inconsistent or wrong with Justice Kennedy's opinion for the court. Well, it wasn't the majority opinion. We know that. Sometimes, concurring judges, they put their own spin, shall we say, on the opinion of the court, right? And it's our job to test whether that concurring judge's spin is in some way intention or inconsistent with Justice Kennedy's opinion or inconsistent with the opinion of the court. And what I'm asking you is where is... I'm giving you an opportunity to tell us where Justice Scalia's concurrence or where the Dawkins opinion is in some tension or does violence to the majority's opinion in Miller-El. Well, again, and I will concede that I don't remember expressly Justice Scalia's concurring opinion when I read it. It's been some time. But overall, the overarching theme was that, again, it included the Tenth Circuit did this, the Fifth Circuit did this, which, again, the subsequent cases from the Supreme Court in Buck v. Davis has said, among others, that it was wrong, that that wasn't part of the majority opinion. I thought what he was trying to do, counsel, was synthesize the text of that as a whole in saying under C-2, that the majority opinion, that the certificate of appeal may issue only if the applicant has made a substantial showing of the denial of constitutional right. And picking up on what Judge Hardiman said and going back to what Dawkins says, there can't be because there is no way that under AEDPA the writ can issue. So what we're left here is with a very interesting puzzle that has no application to the actual case. So I thought what Justice Scalia was trying to get at was saying, yeah, look, I mean, at the end of the day here, what we are looking at is a petition for a writ of habeas corpus. If it can't issue because of what Congress has said, unless C-2 gives the Court of Appeals the discretion to say, no, no, we're not going to issue it. So doesn't that sort of resolve the conundrum? It does. But I think where the problem lies is, which we haven't discussed, is if once you start inquiring about the merits analysis into a COA, it starts running into jurisdictional issues as well, because the Court wouldn't have jurisdiction in the first place to hear the merits unless and until a COA is actually granted. And I guess I just want to close with the thought that if I know the appellee in their papers as well wasn't actually advocating for a higher standard in this case, and I think that granting of a COA we know is a difficult task in itself, even though it's a relatively low threshold. But frankly, if you're going to start incorporating into an AEDPA standard into this analysis, it will make it very, very difficult for petitioners or appellants, applicants rather, to get even past the threshold. Thank you very much.